PER CURIAM.
In this worker’s compensation case, appellant/claimant John D. White appeals the order of the judge of compensation claims (JCC) finding: (1) claimant’s *762 hepatitis not causally related to claimant's compensable workplace accident; (2) claimant entitled to compensation for the initial examination and testing of Dr. Galceran but acknowledging that the employer/carrier had already paid for these services; and (3) claimant not entitled to compensation for the services of Dr. Gardner. In light of these findings, the JCC failed to award claimant attorney’s fees and costs. On appeal, claimant does not challenge the JCC’s finding with respect to the causation of claimant’s hepatitis, but argues that he is nonetheless entitled to payment for the medical services of Dr. Gardner and Dr. Galceran. With respect to the services of Dr. Gardner, we agree with the JCC's finding that the claimant is not entitled to payment for Dr. Gardner’s services and affirm. With respect to the services of Dr. Galceran, however, we reverse and remand with directions.
On December 1, 1986, claimant was injured when he fell from a scaffold in the course and scope of his employment as a plasterer with appellee Seminole Plastering. Complaining of injury to his back, claimant was initially hospitalized for ten days and released. After seven days at home, claimant was sent to another hospital for further testing. After testing, claimant was transferred to an Orlando hospital where he came under the care of orthopedist Dr. Gary McBride who diagnosed claimant’s condition as a severe LI burst compression fracture. Claimant underwent a posterior spine fusion on December 20, 1986. Claimant’s treatment included blood transfusions required by his surgery.
On August 24, 1987, Dr. McBride recommended that claimant undergo medical evaluation to rulé out liver abnormality which could possibly be related to his work injury and subsequent surgery.' Dr. McBride referred claimant to Dr. Galceran. Dr. Galceran first saw claimant on August 26, 1987, and was advised of claimant’s prior episode of hepatitis in 1973 and history of alcohol consumption. Dr. Galceran diagnosed claimant as suffering from hepatitis A and prior exposure to hepatitis B. Galceran opined that there was only a “low probability” that claimant’s hepatitis was due to the blood transfusions, and only a “low probability” that claimant’s medication aggravated his prior hepatitis. Dr. Galceran again saw claimant on August 2, 1988, noting that claimant’s liver enzymes were still elevated, leading him to conclude that claimant’s medications were not a factor contributing to claimant’s hepatitis.
After moving to Ft. Myers, and without specific authorization to do so, claimant went to see Dr. Gardner on August 29, 1988. Claimant testified that he thought Dr. Gardner was authorized because of a phone call between Dr. Gardner’s office and the “workmens’ comp office.” Claimant admitted, however, that he was not specifically told that Dr. Gardner was authorized. Claimant next saw Dr. Gardner on September 15, 1988. Dr. Gardner opined that there was at least a 50/50 chance that claimant’s blood transfusions and/or medications could be a contributing source of claimant’s hepatitis although this opinion failed to take into consideration claimant’s history of alcohol consumption which claimant did not report to Dr. Gardner. The employer/carrier (e/c) filed notice to controvert payment for diagnosis and treatment of claimant’s hepatitis on November 27, 1989. The hearing on the claim was held on March 22, 1991.
It is somewhat anomalous that the JCC’s order finds claimant entitled to compensation for only the initial visit to Dr. Galceran because the record shows clearly that the e/c acknowledged at the hearing that it would pay for all of Dr. Galceran’s bills, and thought it had done so by December 4, 1990. In any event, if Dr. Galceran has not already been paid for both office visits and associated charges the JCC is directed to modify the order to award such compensation. This is because we find no competent, substantial evidence to support the JCC’s implicit conclusion that the second visit to Dr. Galceran was not required to determine that claimant’s hepatitis was not aggravated by his medication. In fact, Dr. Galceran testified that when claimant returned for a second visit on August 2, 1988, his liver enzymes were still elevated, and in light of the reported history that claimant had ceased taking medication, Gal-ceran opined that claimant’s medication *763 was not responsible for aggravating claimant’s hepatitis. We find that the second visit to Dr. Galceran was necessary to determine whether claimant’s hepatitis was aggravated by his medication. As such, claimant is entitled to compensation for both visits to Dr. Galceran and the associated charges. Furthermore, even if the e/c has already paid for all of these charges, as represented at the hearing, such payment was not forthcoming until after the claim had been controverted. Even if these charges were paid by the e/c prior to the hearing, we find that claimant’s attorney was responsible for procuring such payment, and should be awarded an attorney’s fee for these efforts. See Dalton v. Orange County Sheriff, 503 So.2d 406 (Fla. 1st DCA 1987). The JCC is directed to modify his order accordingly.
In light of Dr. Galceran’s opinion, the subsequent evaluation as to the causation and possible aggravation of claimant’s hepatitis rendered by Dr. Gardner was not reasonably required, and we find competent, substantial evidence to support the JCC’s conclusion that Dr. Gardner was not authorized to treat claimant. Thus, we affirm the JCC’s denial of compensation for the services of Dr. Gardner. We remand the case to the JCC for entry of an order consistent with this opinion.
AFFIRMED in part, REVERSED in part, and REMANDED with directions.
ERVIN, MINER and WOLF, JJ., concur.